SUMNER PECK *vs.* SETH HAPGOOD & another, Executors.

A. mortgaged one tract of land to P., to secure a note, and P. assigned the mortgage to
    H.: P. afterwards mortgaged another tract of land to H., to secure another note:
    H.'s executors brought a single writ of entry against P. to foreclose both mortgages,
    under Rev. Sts. *c.* 107, and obtained a consolidated conditional judgment, viz. that they
    should recover possession of both the tracts of land demanded, unless P., or his heirs,
    &c., should, within two months, pay the whole amount (named) due upon both said
    mortgages, and costs of suit. *Held,* on a writ of error, that the judgment was erro-
    neous *in toto.*

*It seems,* that when the same person has two distinct mortgages, to secure two distinct
    debts of the same mortgagor, the mortgages cannot be united in one suit, under the
    Rev. Sts. *c.* 107, so as to authorize one consolidated conditional judgment.

A writ of error will lie to reverse a judgment of the court of common pleas, in an action
    commenced since the *St.* of 1840, *c.* 87, took effect, although an appeal might have
    been taken from such judgment by virtue of § 5 of that chapter.

THIS was a writ of error to reverse a judgment recovered
by Seth Hapgood and Ephraim Hinds, executors of the last
will of Hutchins Hapgood, at the court of common pleas,
held in this county, in March 1842. The action, in which
said judgment was rendered, was brought against the plaintiff
in error to recover two tracts of land conveyed by him in
mortgage. One of these tracts contained about 100 acres,
situate in Hubbardston, which were originally mortgaged to
the plaintiff in error by one Hunting, by deed dated June
29th 1825, conditioned for the payment of a note for $1000,
and interest thereon. This mortgage the plaintiff in error
transferred and assigned to said Hutchins, by deed dated Sep-
tember 3d 1825. The other tract contained about 50 acres,
situate in Hubbardston, and was mortgaged to said Hutchins,
by the plaintiff in error, by deed dated April 28th 1834, con-
ditioned for the payment of a note for $500, and interest
thereon. Judgment was rendered in said action, upon default
of the plaintiff in error, that the said Hapgood and Hinds,
executors as aforesaid, recover against him possession of both
the tracts of land demanded, unless within two months from
the day of said judgment, he, his heirs, executors or admin
istrators, should pay unto the said Hapgood and Hinds, ex-
ecutors as aforesaid, or their assigns, the sum of $1771·50,
and interest, and costs of suit, taxed at $24·45; which said

sum of $1771·50 was the whole amount due upon both of said mortgages.

*F. H. Dewey,* for the plaintiff in error.

*Barton,* for the defendants in error.

SHAW, C. J. It seems to us very clear that this judgment was erroneous. Our special real action provided by the Rev. Sts. *c.* 107, to foreclose a mortgage, is a peculiar proceeding, resembling in substance, perhaps, as much a bill in equity as a suit at law. Courts are fully authorized, in this action, to make any such order or decree, and issue any such process, as justice and equity may require. Little aid, therefore, can be drawn from the rules regulating other real actions.

We think, there can be no reasonable doubt that, even in a case where the same person is the mortgagee in two distinct mortgages, to secure several debts, and the same person is mortgagor, the two could not be united in one suit, so as to have one consolidated conditional judgment ; though we have not been referred to any decided case to that effect. It seems contrary to principles, and to a just construction of the statute. It would be to hypothecate each parcel of the mortgaged premises for the debt secured by the other ; which the parties themselves have not done. Then there are so many dependent and derivative rights to each, which may be held by different persons, as assignees or attaching creditors of each equity of redemption, that such consolidated judgment would tend to produce a confusion of rights and consequent injustice. And we think the statute (Rev. Sts. *c.* 107, § 5) implies that there is to be a single specific judgment on the mortgage. " The court shall inquire and determine how much is due to the plaintiff on the mortgage, and shall then enter judgment that if the defendant shall, within two months after the judgment, pay the sum so found due on the mortgage, &c., the mortgage shall be void, and the defendant shall hold the premises discharged thereof." Such a judgment, therefore, gives to the party, who has the right to redeem, all the benefit of a decree under a bill to redeem, and reinstates him in his legal estate, without such decree. The whole

15 *

scheme of such action and judgment seems to assume that it applies to one mortgage and to the mortgaged property specifically bound by the condition contained in it, or the defeasance annexed to it, and no farther. Whether it would be competent for the court, under the broad powers conferred by § 29, to enter two separate, conditional judgments, we give no opinion.

But the case before us is not one where the original defendant Peck was the mortgagor and debtor in both mortgages. The first was a mortgage made by Hunting to Peck, and by him assigned to Hapgood, and for aught that appears, the debt due upon it was the proper debt of Hunting. When Peck assigned it, he had no further interest or concern in it; but the whole passed to the assignee. The original defendant was not the mortgagor, nor the assignee of the mortgagor. The only apparent reason for bringing the suit on that mortgage against him was, that he was tenant in possession; in which case the statute seems to imply, that the action shall be by common writ of entry, though, perhaps, the plaintiff may, if he choose, set out the mortgage. Rev. Sts. *c.* 107, §§ 4, 8.

The court being of opinion that the judgment was erroneous, the only question is, whether error lies to reverse it; and we think it does. It is an error that goes to the whole of the judgment.

It was objected that the writ of error ought not to be sustained, because the plaintiff in error, the original defendant, had a right of appeal from the judgment, if it was erroneous, and therefore could not have error; and the cases of *Savage* v. *Gulliver*, 4 Mass. 171, and *Monk* v. *Guild*, 3 Met. 372, were relied upon.

Although the plaintiff in error had a right of appeal from a judgment by default, under the Rev. Sts. *c.* 82, § 6, which altered the law as it formerly stood, yet this was essentially altered by *St.* 1840, *c.* 87, §§ 4, 5, which took away the general right of appeal from the judgment of the court of common pleas to the supreme judicial court, and left only a limited and qualified right of appeal, upon the matter of law,

when the judgment would appear to be erroneous upon the face of the record. The principle upon which the case of *Savage* v. *Gulliver* and *Monk* v. *Guild,* and the intermediate cases were decided — a principle adopted, with many qualifications and exceptions — was, that an appeal, as the law then stood, opened the whole case, upon matter of fact as well as law ; that the pleadings might be amended, new evidence offered, and the case treated as an original action. Under that view of the subject, it was held reasonable that, if a party could appeal and declined to do so, he should be considered as acquiescing in the judgment, and barred of his writ of error. But *cessante ratione, cessat lex.* A different consideration applies to the limited right of appeal allowed by *St.* 1840, which is itself in the nature of a writ of error, to bring the matter of law before the court. It may therefore be considered as in the nature of a substitute for a writ of error, and so constitute a cumulative rather than an exclusive remedy. Such was the view taken of it by the court, in a case which came before us, on error from a judgment passed after the *St.* of 1840. *Day* v. *Laflin,* 6 Met. 280. It may be that, as the law now stands, by *St.* 1840, and under the qualified right of appeal there given, the pleadings might be amended in the appellate court, and the error in the judgment of the court below corrected by a new judgment ; and therefore, in some respects, this would be more convenient and beneficial than a writ of error. But as the party may often be unaware of the nature and erroneous character of the judgment against him until after the court has risen, during the session of which he must claim his appeal, and after an execution, in common cases, has issued, the court are of opinion that this general consideration of expediency is not sufficient to deprive a party, who discovers that an erroneous judgment has been rendered against him, from his common law right of reversing it by a writ of error ; and therefore that the judgment before us, which is manifestly erroneous in matter of substance which goes to the entire judgment, must be reversed.